UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'

| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
|---|---|---|---|
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants | |
| Juan Gonzalez | Bryan Carmody | |

**Proceedings:** MOTION RE: PETITION FOR TEMPORARY INJUNCTION UNDER SECTION 10(J) OF THE NATIONAL LABOR RELATIONS ACT (Dkt. 1, filed July 21, 2016)

## I. INTRODUCTION

Petitioner Mori Pam Rubin, the Director of Region 31 of the National Labor Relations Board ("the Regional Director"), initiated this action on July 21, 2016 for and on behalf of the National Labor Relations Board ("NLRB" or "Board"). The NLRB seeks a "temporary injunction" restraining respondent, the Hospital of Barstow ("Barstow"), from engaging in unfair labor practices related to its negotiations with the California Nurses Association ("CNA"). The general counsel of the NLRB has initiated two proceedings against Barstow before the Board regarding these allegedly unfair labor practices, and the Regional Director brought this action to obtain interim relief pending the resolution of those proceedings.

The NLRB filed its application for a temporary injunction on July 21, 2016 and requested a hearing on the petition for August 29, 2016. Dkt. 1. The following day, on July 22, 2016, the NLRB filed a memorandum of points and authorities in support of its petition. Dkt. 7 ("Pet. Memo."). On August 8, 2016, Barstow filed its opposition to the petition. Dkt. 13. On the same day, Barstow also sought leave to file a supplemental memorandum in opposition so that it could include affidavits and evidence in support of its opposition. Dkt. 14. Barstow argued it had been unable to prepare this material as a result of the volume of evidence presented by the NLRB. Barstow requested that its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
|---|---|---|---|
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

supplemental opposition be due on September 12, 2016. Two days later, on August 10, 2016, the NLRB opposed Barstow's motion to file a supplemental memorandum, arguing that Barstow had sufficient time to prepare its evidence and that the delay Barstow requested would frustrate the purpose of Section 10(j) of the National Labor Relations Act ("NLRA"), which was intended to provide for prompt interim relief. Dkt. 17. On August 11, 2016, the Court denied Barstow's application without prejudice after finding that leave to file supplemental briefing and/or evidence in support of Barstow's opposition was neither necessary nor appropriate at that time. Dkt. 18. On August 15, 2016, the NLRB replied to Barstow's opposition to the underlying petition. Dkt. 20. The Court now considers whether to grant the NLRB's application for a temporary injunction.

After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Respondent Barstow operates a hospital in Barstow, California, and employs between sixty and seventy-five registered nurses ("RNs"). CNA is labor organization, and on June 29, 2012, the NLRB certified CNA as the exclusive representative of the Barstow RNs for purposes of collective bargaining.[1]

Negotiations over the terms of a collective bargaining agreement between CNA and Barstow commenced in July 2012. In 2012 and 2013, CNA alleged that Barstow

---

[1] Barstow has contested CNA's certification before the Board and maintains here that it has no duty to recognize or bargain with CNA because the union is not certified as the RNs' bargaining representative. However, the Board recently upheld the certification of CNA as valid. Hospital of Barstow, Inc., 364 NLRB No. 52 (July 15, 2016). Barstow has since filed a petition for review with the Court of Appeals for the District of Columbia Circuit, which is now pending. That Barstow has challenged the Board's determination before the Court of Appeals does not invalidate the existing certification because it is a final order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
|---|---|---|---|
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

engaged in unfair labor practices related to these negotiations, and, thereafter, the NLRB obtained a preliminary injunction against Barstow from this Court on August 2, 2013. The Board subsequently found those allegations to be meritorious.[2] See Hosp. of Barstow, Inc., 361 NLRB No. 34 (Aug. 29, 2014). After more than thirty collective bargaining sessions, the parties have not yet reached a collective bargaining agreement. The NLRB now alleges that Barstow violated the NLRA in five ways during negotiations that occurred between December 2014 and August 2015.

First, the NLRB contends that Barstow engaged in bad faith bargaining and surface bargaining, including abruptly ending negotiating sessions as well as rejecting and refusing to respond to CNA's proposals. The NLRB further alleges that Barstow offered CNA a package proposal designed to frustrate agreement. For example, the proposal included a provision that required CNA to admit to the existence of a Labor Relations Agreement, though CNA has contested the existence of such an agreement before this Court and the Board.

Second, in 2015, Barstow discontinued its practice of granting annual wage increases during the first pay period of April and did so without notifying or bargaining with CNA. After learning of this change, CNA proposed a side agreement on wages to which Barstow never responded. Barstow does not contest these allegations, but asserts that they are moot because Barstow implemented a wage increase in July 2015.

Third, in February or March of 2015, Barstow implemented a new policy in the Intensive Care Unit ("ICU") that increased the frequency with which nurses are required to electronically chart patient head-to-toe assessments. According to the declaration of Nurse Sylvia Powers, the new policy adds 1.5 to 2 hours of extra work per shift for each

---

[2] The Court of Appeals for the District of Columbia Circuit granted Barstow's petition for review, denied enforcement, and remanded the case to the Board to determine the validity of the Union's certification of representative. On remand, the Board upheld the validity of CNA's certification. Hospital of Barstow, 364 NLRB No. 52. Barstow's petition for review in the D.C. Circuit is pending.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

ICU nurse. Barstow implemented this change without notifying or bargaining with CNA. Barstow does not contest this allegation, but argues that it did not have a duty to bargain with respect to this policy change because it goes to the core of its business.

Fourth, the NLRB alleges that, on approximately July 10, 2015, Barstow issued a memorandum announcing the implementation of a new overtime policy and then enforced the new policy without notifying CNA or providing the union with the opportunity to bargain. The new policy imposes discipline on nurses who work past their scheduled shifts. Barstow disputes that the overtime policy was new because the policy had been included in its employee handbook.

Fifth, and finally, Barstow has failed to respond to eight of CNA's information requests. Barstow does not dispute this allegation, but argues that it is not obligated to respond to requests seeking information that is merely presumptively relevant and that CNA's requests were intended to harass Barstow.

Based on these events, the general counsel of the NLRB initiated two unfair labor practice proceedings before the Board. See Case 31-CA-153504; Case 31-CA-167522. These cases remain unconsolidated and are pending before the Board.

### III. LEGAL STANDARD

Section 10(j) of the NLRA, under which the Regional Director is proceeding in this case, grants the NLRB authority to seek temporary relief from a district court pending its resolution of an unfair labor practice charge. 29 U.S.C. § 160(j); McDermott v. Ampersand Pub., LLC, 593 F.3d 950, 957 (9th Cir. 2010). "The district court is given authorization to grant such temporary relief or restraining order as it deems just and proper, keeping in mind that the underlying purpose of Section 10(j) is to protect the integrity of the collective bargaining process and to preserve the Board's remedial power while it processes the charge." McDermott, 593 F.3d at 957 (citations and quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

To determine whether an injunction pursuant to Section 10(j) should issue, a district court considers the traditional criteria governing the issuance of a preliminary injunction. Frankl v. HTH Corp., 650 F.3d 1334, 1355 (9th Cir. 2011). A party seeking temporary injunctive relief must satisfy a four-factor test by showing: "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "Thus, when a Regional Director seeks § 10(j) relief, he must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Frankl, 650 F.3d at 1355.

Regarding the likelihood of success on the merits, a district court considers "the probability that the [NLRB] will issue an order determining that the unfair labor practices alleged by the Regional Director occurred and that [a Circuit Court of Appeals] would grant a petition enforcing that order, if such enforcement were sought." Id. The Ninth Circuit has explained that a Regional Director initiating a Section 10(j) proceeding may satisfy this requirement "by producing some evidence to support the unfair labor practice charge, together with an arguable legal theory." Id. Additionally, "irreparable injury is established if a likely unfair labor practice is shown along with a present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later relief." Id. at 1362. If a likelihood of irreparable harm and success on the merits is established, "the [Regional Director] will have established that preliminary relief is in the public interest," and there is considerable support for a finding that the equities weigh in favor of an injunction. Id. at 1365.

## IV.   ANALYSIS

### A.   Likelihood of Success on the Merits

The NLRB argues that by engaging in the conduct described above, Barstow has engaged in unfair labor practices under Sections 8(a)(1) and 8(a)(5) of the NLRA. 29 U.S.C. §§ 158(a)(1), (5). In particular, the NLRB contends that the following were unfair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
|---|---|---|---|
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

labor practices: (1) Barstow's bad faith and surface bargaining; (2) Barstow's temporary discontinuation of its practice of granting annual wage increases in April, without notifying or negotiating with CNA; (3) Barstow's implementation of a new charting policy in the ICU, without notifying or bargaining with CNA; (4) Barstow's implementation and enforcement of a new overtime policy, without notifying or bargaining with CNA; and (5) Barstow's refusal to respond to CNA's requests for information. The Court finds that the NLRB is likely to succeed on the merits.

      First, the Board is likely to conclude that Barstow has refused to bargain with CNA in good faith. Several facts weigh in favor of this finding, particularly Barstow's refusals and delay in exchanging proposals, Barstow's abrupt cancellation of bargaining sessions, and Barstow's repeated offering of proposals that included provisions that CNA had already rejected. See Byrant & Stratton Business Institute, 321 NLRB 1007, 1042 (1996), enforced 140 F.3d 169 (2d Cir. 1998); Camelot Terrace, 357 NLRB No. 161, 2011 WL 7121892, at *10 (Dec. 30, 2011); A-1 King Size Sandwiches, Inc., 265 NLRB 850, 858 (1982) ("'the combination of unrealistically harsh positions adhered to by the company . . . and the avoidance of bargaining on key issues provides substantial support' for the conclusion of surface bargaining") (quoting NLRB v. Wright Motors, Inc., 603 F.2d 604, 609–10 (7th Cir. 1979)). In a recent case involving similar facts—including the same charging union and the same chief negotiator acting on behalf of an employer—the Administrative Law Judge concluded that similar conduct amounted to an unfair labor practice. Fallbrook Hospital Corporation d/b/a Fallbrook, JD (SF)-21-13, Case 21-CA-090211 (NLRB Div. of Judges) (concluding that respondent-hospital failed to bargain in good faith in part because it deliberately acted to prevent any meaningful progress during bargaining sessions and departed bargaining sessions abruptly). This decision weighs in favor of finding that the Regional Director will achieve similar success against Barstow. Nelson v. Western Plant Services, Inc., 1996 WL 438778, at *4 (W.D. Wash. 1996). Additionally, Barstow has demonstrated a history of bad faith bargaining, as found by this Court in a previous, related case. See Mori Pan Rubin v Hospital of Barstow, Inc., d/b/a/ Barstow Community Hospital, No. 5:15-cv-00933-CAS (DTBxx) (Aug. 2, 2013); Cont'l Ins. Co., 204 NLRB 1013, 1019 (1973) (the "previous relations of the parties" and "antecedent events" are relevant to determining whether a party negotiated in good faith) (quoting NLRB v. Truitt Mfg. Co., 351 U.S. 149, 155

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
|---|---|---|---|
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

(1956) (Frankfurter, J., concurring in part, dissenting in part)).

Barstow has not contested the NLRB's allegation that Barstow acted in bad faith. Instead, Barstow reasons that its misconduct is excused by CNA's bad faith. This argument, however, is unavailing, as Barstow fails to offer any evidence here that CNA has bargained in bad faith. Barstow further argues that it is improper for the NLRB to assess and characterize the content of Barstow's proposals and that provisions of its package proposal were not designed to frustrate agreement. These arguments, too, fail. While the Ninth Circuit has called into question the appropriateness of a "self-respecting union" standard, see NLRB v. Tomco Commc'ns, Inc., 567 F.2d 871, 883 (9th Cir. 1978), the NLRB "must take some cognizance of the reasonableness of the position taken by an employer in the course of bargaining negotiations if it is not to be blinded by empty talk and by the mere surface motions of collective bargaining," NLRB v. Holmes Tuttle Broadway Ford, Inc., 465 F.2d 717, 719 (9th Cir. 1972) (quotation marks omitted). See also NLRB v. Mar Len Cabinets, Inc., 659 F.2d 995, 999 (9th Cir. 1981) ("We should be cautious in inferring motivation from proposal content . . . . Nevertheless, proposal content supports an inference of intent to frustrate agreement where, as here, the entire spectrum of proposals put forward by a party is so consistently and predictably unpalatable to the other party that the proposer should know agreement is impossible."). Indeed, the NLRB has rejected the "misconception that under no circumstances will the Board consider the content of a party's proposals in assessing the totality of its conduct during negotiations." Reichhold Chemicals, 288 NLRB 69, 1988 WL 213691, at *1 (1988). Regardless of whether "no union would reasonably be expected to agree" to the terms that Barstow proposed, Pet. Memo. 16, the Board is likely to conclude that Barstow's repeated proposals of terms that CNA had previously rejected and contested in court were designed to frustrate agreement.

Second, the Board is likely to conclude that Barstow's unilateral alteration of its practice of granting annual wage increases in April constitutes an unfair labor practice. It is well established that an employer violates Section 8(a)(5) if it unilaterally modifies the terms or conditions of employment without bargaining to an impasse. Litton Financial Printing Div. v. NLRB, 501 U.S. 190, 198 (1991); NLRB v. Auto Fast Freight, Inc., 793 F.2d 1126, 1129 (9th Cir. 1986). "A wage increase program constitutes a term or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

condition of employment when it is an established practice . . . regularly expected by the employees." Gruma Corp. d/b/a Mission Foods & United Food & Commercial Workers Int'l Union Local 99, CLC, 350 NLRB 336, 337 (2007) (quotation marks omitted). Barstow does not refute the NLRB's allegation that Barstow altered a well established practice of providing wage increases during the first pay period in April. Barstow's argument that the NLRB's wage allegation is moot is not persuasive because the three-month delay in implementing the wage increases constitutes an alteration to a term of employment for which bargaining is required. Cf. Daily News of Los Angeles v. NLRB, 73 F.3d 406, 412 (D.C. Cir. 1996) ("The crucial question, therefore, is what *Katz* [396 U.S. 736 (1962)] requires of an employer if an established merit-increase program is fixed as to timing and criteria, but discretionary as to amount. Given that *Katz* proscribes unilateral changes to mandatory subjects of bargaining, the answer to this question is relatively simple. . . . *Katz* demands that the Company continue to apply the same criteria and use the same formula for awarding increases during the bargaining period as it had previously."). Thus, Barstow's initial failure to provide wage increases and its subsequent provision of wage increases in July, three months after the established date for implementing such raises, was a mandatory subject of bargaining. Barstow does not contest that it refused to bargain with CNA with respect to a side agreement on wages. Consequently, the Board is likely to find that Barstow's failure to notify and bargain with CNA before temporarily discontinuing or delaying its annual April wage increases is an unfair labor practice.

Third, the Board is likely to conclude that Barstow's implementation of a new ICU charting policy without notifying or bargaining with CNA is an unfair labor practice. On one hand, Barstow contends that its new ICU charting policy is not subject to mandatory bargaining because the matter goes to its core business interests. See First National Maintenance v. NLRB, 452 U.S. 666, 676–77 (1981) (management decisions "that have only an indirect and attenuated impact on the employment relationship" are not subject to mandatory bargaining). On the other hand, the NLRB argues that the ICU charting policy is subject to mandatory bargaining because it directly implicates the terms of employment. See id. at 677 ("management decisions . . . [that] are almost exclusively an aspect of the relationship between employer and employee" are subject to mandatory bargaining). Neither contention is correct. Rather, the new ICU charting policy falls

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

somewhere in between, in that it is a management decision that has "a direct impact on employment" yet is focused on "the scope and direction of the enterprise," a concern that is "wholly apart from the employment relationship." Id. Specifically, Barstow's charting policy—which adds up to two hours of additional work per shift for each ICU nurse—has more than an "attenuated impact" on the conditions of the RNs' employment, yet the policy relates primarily to patient care. For this intermediate category of decisions, bargaining is required "only if the benefit, for labor-management relations and the collective-bargaining process, outweighs the burden placed on the conduct of the business." Id. at 679. Barstow does not allege how bargaining with CNA over the charting policy would burden its business. Absent the articulation of specific business interests, the Board is likely to find that "collective discussions" on the ICU charting policy would result in "decisions that are better for both management and labor and for society as a whole," id. at 678, and is therefore likely to conclude that Barstow's unilateral implementation of the new charting policy is an unfair labor practice.

Fourth, the Board is likely to find that Barstow's unilateral change of its overtime policy and the subsequent enforcement of the new policy amounts to an unfair labor practice. The modification of an overtime policy constitutes a change in the terms and conditions of employment. See Sgs Control Servs., Inc., 334 NLRB 858, 861 (2001); Sw. Forest Indus., Inc. v. NLRB, 841 F.2d 270, 272 n.2 (9th Cir. 1988) (treating a change in the method for computing overtime as a change in the terms of employment). In addition, "[i]t is well established that rules governing the imposition of employee discipline are mandatory subjects of bargaining." California Offset Printers, Inc. & Graphic Commc'ns Union, Local 404 m, Int'l Bhd. of Teamsters, 349 NLRB 732, 733 (2007). Barstow argues that its July 10, 2015 memorandum and subsequent enforcement of the overtime policy announced therein did not implement a new policy because Barstow's employee handbook already included the requirement that overtime must be approved in advance. This argument is unlikely to succeed, however, because "[i]t is the actual practice, rather than the formal authority, that is controlling." Cent. Washington Hosp., 303 NLRB 404, 405 (1991) (citing Seattle-First National Bank v. NLRB, 892 F.2d 792, 799 (9th Cir. 1990)); see also Rosdev Hosp., Secaucus, LP & LA Plaza, Secaucus, LLC & Unite Here, Local 69, 349 NLRB 202, 209 (2007) ("[A]n employer's past practices and unwritten policies which involve the application of terms and conditions of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

employment are viewed as mandatory subjects of bargaining which are protected from unilateral change."). Under the status quo before July 10, 2015, RNs were not disciplined for working past their scheduled shifts. The Board is therefore likely to conclude that Barstow's implementation and subsequent enforcement of a new overtime policy without notifying or bargaining with CNA is an unfair labor practice.

Fifth, the Board is likely to find that Barstow's refusal to respond to CNA's requests for information amounts to an unfair labor practice. "There can be no question of the general obligation of an employer to provide information that is needed by the bargaining representative for the proper performance of its duties." NLRB v. Acme Indus. Co., 385 U.S. 432, 435–36 (1967). See also San Diego Newspaper Guild, Local No. 95 of Newspaper Guild, AFL-CIO, CLC v. NLRB, 548 F.2d 863, 866 (9th Cir. 1977). "[A]n employer must provide the union with information that is relevant and necessary to bargaining." Frankl ex rel. N.L.R.B. v. HTH Corp., 693 F.3d 1051, 1064 (9th Cir. 2012). Relevancy is based on a liberal, discovery-type standard. Retlaw Broad. Co., A Subsidiary of Retlaw Enterprises v. NLRB, 172 F.3d 660, 669 (9th Cir. 1999) (quotation marks omitted). Information is relevant if it would "enable the [union] to understand and intelligently discuss the issues raised in bargaining permitted by the collective bargaining contract." Id. Information "bearing directly on mandatory bargaining subjects," including information "pertaining to wages, hours or conditions of employment, is presumptively relevant, and must be disclosed unless the employer proves a lack of relevance." Press Democrat Pub. Co. v. NLRB, 629 F.2d 1320, 1324 (9th Cir. 1980).[3] In contrast, when seeking information that is not pertinent to collective

---

[3] Contrary to Barstow's contention, the Court of Appeals for the District of Columbia Circuit in IronTiger Logistics, Inc. v. NLRB, 823 F.3d 696 (D.C. Cir. 2016), did not call into question the long-standing rule that an employer must timely respond to a question seeking presumptively relevant information. See id. at 699–700 ("[W]e have no basis to quarrel with . . . the proposition that an employer must timely respond to a request for presumptively relevant information."). Rather, IronTiger required a finding that information relates to bargaining unit employees before such information could be considered presumptively relevant. Id. at 700.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

bargaining, "the union must affirmatively demonstrate relevance to the bargainable issues." Id. Of the eight information requests to which Barstow did not respond, the Board is likely to find that seven requests seek information that is presumptively relevant, because the questions relate directly to the terms of conditions of bargaining unit employees. The Board is also likely to find that CNA has provided sufficient affirmative evidence demonstrating that the eighth request seeks information that is relevant to the terms and conditions of the RNs' employment. Barstow alleges that CNA has issued its information requests to harass the hospital. However, Barstow provides no evidence at this time to suggest that CNA did not intend to make legitimate use of the information it requested. Therefore, the Board is likely to conclude that Barstow's refusal to respond to CNA's eight information requests is an unfair labor practice.

Accordingly, the Court finds that the Board will likely conclude that Barstow has engaged in unfair labor practices, and therefore finds that the first criterion for issuing a temporary injunction is satisfied.

### B. Irreparable Harm

The NLRB contends that interim injunctive relief is necessary to prevent irreparable harm in the form of making inconsequential the RNs' choice of CNA as their bargaining representative, decreased support for CNA, interference with the Board's ability to grant an appropriate remedy, and CNA's diminished ability to bargain effectively. The Court agrees. The Ninth Circuit has explained that failure to bargain in good faith likely causes sufficient irreparable harm to justify the issuance of an injunction under Section 10(j). Small v. Avanti Health Systems, LLC, 661 F.3d 1180, 1191–92 (9th Cir. 2011) ("Given the central importance of collective bargaining to the cause of industrial peace, when the Director establishes a likelihood of success on a failure to bargain in good faith claim, that failure to bargain will likely cause a myriad of irreparable harms."); Frankl, 650 F.3d at 1362 ("[F]ailure to bargain in good faith . . . has long been understood as likely causing an irreparable injury to union representation."). Failure to bargain in good faith threatens industrial peace, deprives employees of a wide range of economic and non-economics benefits brought about by labor unions, and also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
|---|---|---|---|
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

weakens support for a union in a way that cannot be remedied by subsequent relief. Small, 661 F.3d at 1192.

     The Court rejects Barstow's argument that the NRLB's delay in seeking a temporary remedy precludes a finding of irreparable harm. The passage of time between the conclusion of the alleged unfair labor practices and the request for relief here is attributable to the Regional Director's completion of the two investigations that disclosed the evidence of unfair labor practices which are alleged in the instant petition. Furthermore, "[d]elay by itself is not a determinative factor in whether the grant of interim relief is just and proper. Delay is only significant if the harm has occurred and the parties cannot be returned to the status quo or if the Board's final order is likely to be as effective as an order for interim relief." Aguayo ex rel. NLRB v. Tomco Carburetor Co., 853 F.2d 744, 750 (9th Cir. 1988) overruled on other grounds by Miller ex rel. NLRB v. California Pac. Med. Ctr., 19 F.3d 449 (9th Cir. 1994). Interim relief is appropriate, despite the delay, when "the record provide[s] specific support for the conclusions that there would likely be irreparable harm beyond that which could be remedied once the Board had ruled, and that interim relief was more likely to curb the ongoing unfair labor practices than subsequent relief." Frankl, 650 F.3d at 1364 (concluding that a delay did not preclude a finding of irreparable harm in a case in which the Regional Director waited thirteen to seventeen months to file a § 10(j) petition); see also Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc., 80 F. Supp. 3d 1058, 1104–06 (C.D. Cal. 2015) (Morrow, J.) (finding that a delay lasting approximately 11 to 13 months after the alleged unfair labor practices occurred did not preclude a finding of irreparable harm). Where the union remains willing to represent the employees and bargain on their behalf during an interim bargaining order, as is the case here, interim relief is warranted because such relief

> would directly restore to the employees the advantages of day-to-day union representation during that period, advantages that cannot be restored retroactively, and also could lead to the conclusion of a collective bargaining agreement, with concomitant employee benefits, during the interim period. Thus, the interim relief ordered immediately

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

[would] remed[y] statutory injuries as to which no retroactive relief is available.

Frankl, 650 F.3d at 1364; see also Small, 661 F.3d at 1195, n.20 (same).

Barstow also argues that the NLRB's evidence of irreparable harm contains hearsay that lacks probative value.[4] This argument fails because the Court may hear and attribute weight to evidence, although it may be inadmissible, in deciding a motion for preliminary injunction. See Rubin, 80 F. Supp. 3d at 1072; Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.").

The Court therefore finds that the Board will likely conclude that the Regional Director has shown a likelihood of irreparable injury.

### C. Balance of the Equities and Public Interest

As stated above, if a likelihood of irreparable harm and success on the merits is established, "the [Regional Director] will have established that preliminary relief is in the

---

[4] Relatedly, Barstow asserts that the NLRB's affidavit evidence is not cognizable and that the petition is premature because the NLRB has not yet developed a record before an Administrative Law Judge. The Court notes that this contention contradicts Barstow's argument that the NLRB has not sought interim relief sufficiently quickly. Furthermore, a Section 10(j) petitioner need only produce "*some* evidence" along with an "arguable legal theory" to make a showing of likelihood of success on the merits. Frankl, 650 F.3d at 1356 (quotation marks omitted) (emphasis added). Courts regularly evaluate affidavit evidence when considering Section 10(j) petitions. See, e.g., Tomco Carburetor, 853 F.2d at 750–51 (9th Cir. 1988); Rubin, 80 F. Supp. 3d 1058.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | EDCV 16-1600 CAS (DTBx) | Date | August 29, 2016 |
| Title | MORI RUBIN, REGIONAL DIRECTOR OF REGION 31 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD V. HOSPITAL OF BARSTOW, INC., D/B/A BARSTOW COMMUNITY HOSPITAL | | |

public interest," and there is considerable support for a finding that the equities weigh in favor of an injunction. Frankl, 650 F.3d at 1365. Barstow does not articulate any countervailing interest to justify denial of injunctive relief. Accordingly, the Court finds that the latter two factors of the preliminary injunction analysis also weigh in favor of granting injunctive relief.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the Regional Director's petition for interim injunctive relief under Section 10(j).

IT IS SO ORDERED.

|  | 00 | : | 17 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |